(No. 57687.—■

ANDREW J. DWYER *et al.*, Appellants, v. DANIEL R. GRAHAM *et al.*, Appellees.

*Opinion filed December 16, 1983.*

William W. Reedy, of Vella & Reedy, P.C., of Rockford, for appellants.

William L. Balsley, of Loves Park, for appellees.

JUSTICE WARD delivered the opinion of the court:

On June 14, 1973, the plaintiffs, Andrew J. Dwyer,

his wife, Ruth M. Dwyer, and their son, Roger, entered into a written "Agreement of Sale" with Daniel R. Graham and David R. Tresemer, who are the defendants. The agreement was prepared by a real estate broker or salesperson, and it is not clear whether she was the agent of the plaintiffs or the defendants. The agreement provided for the sale of certain cement trucks, cement mixers, and ready-mix-cement equipment to the defendants for three lots valued at $3,000 each and a $4,000 note payable on or before January 1, 1974. The agreement provided also for the lease of the plaintiffs' cement plant in Roscoe to the defendants in consideration of the ·payment of rent at the rate of one dollar per yard of concrete delivered to customers of the defendants. The portion of the instrument which is involved here provided:

> "4. Rent is to be $1.00 per yard of concrete delivered. Such rent is to include use of office and equipment, building that houses trucks, and land behind building to the end of lot.
>
> 5. Purchaser is to have use of rental agreement as long as desired.
>
> 6. Seller is to maintain redi-mix plant as long as rental agreement is in effect."

In the spring of 1977, Tresemer sold his interest in the business to Graham in satisfaction of a $13,884 debt, and Tresemer is no longer a party in this litigation.

On January 20, 1979, the plaintiffs served Graham with a 10-day notice to quit for failure to pay rent. Subsequently, they filed a complaint under the forcible entry and detainer statute (Ill. Rev. Stat. 1977, ch. 57, par. 1 *et seq.*) for possession of the leased cement plant. Following a jury trial in April 1979, a verdict was entered in favor of Graham.

In November of 1979, the plaintiffs brought this declaratory judgment action in the circuit court of Winnebago County. Excepting what already had been performed, they

sought a declaration that the lease was not legally enforceable because it was not reasonably limited as to time and duration and because of an alleged lack of mutuality of obligation. At that time, the plaintiffs filed a jury demand.

A motion to dismiss by the defendant, contending that the question of enforcement of the lease had been litigated in the forcible entry action, was denied. Graham then filed an answer raising the affirmative defenses of equitable estoppel and *laches*. Asserting that the greater part of the $13,000 consideration was to obtain the rental agreement, the defendant also filed a counterclaim seeking restitution and damages in the event the lease was declared unenforceable.

The plaintiffs' motion for summary judgment was denied because, in the opinion of the trial court, the "Agreement of Sale" was ambiguous. Their motion to withdraw their jury demand was allowed, and the court, finding that there were no triable issues of fact, denied a subsequent motion by the defendant to file a jury demand.

At a bench trial, Andrew Dwyer testified that he did not read the agreement before signing it and that the parties did not discuss the duration of the lease. Roger Dwyer testified on cross-examination that, after he had expressed reservations concerning the legality of the language involved here, either Graham or Tresemer urged that the language not be changed "since within five years or so [we'll] know whether [we're] either going to buy the business or else be out of the business by that time." Graham also testified that Roger Dwyer had expressed concern about the language. He further testified that he had told the Dwyers that "we did not want to spend $13,000 and be limited to a two-year or five-year lease." Graham said that Andrew Dwyer responded that no problem existed since he was confident that the purchasers would make so much money within a couple of years that they would buy the cement plant. In response to the question "Was there

anything paid for the rental of the buildings and property other than personal property than [sic] the one dollar per yard that's referred to in that agreement?", Tresemer stated, "I don't believe so. That was the agreement."

On October 30, 1980, the circuit court found that the "Agreement of Sale" was severable into a sale of business assets and a lease of the cement plant premises. The court found that the lease, which was indefinite as to duration, was terminable at will by either the plaintiffs or the defendant, and that, by their conduct, the plaintiffs had terminated the lease. The trial court declared that its ruling on issues raised by the counterclaim was being reserved for further hearing by the court.

The defendant appealed to the appellate court, but the appeal was denied for want of a final judgment, since the circuit court had retained jurisdiction for consideration of the counterclaim. The defendant, in the circuit court, moved for and was granted dismissal of his counterclaim. Graham then appealed, and the appellate court reversed and remanded for a jury trial. (110 Ill. App. 3d 316.) The court concluded that the defendant's defenses of estoppel and *laches* must fail because, under the circumstances surrounding the execution of the "Agreement of Sale," the trial court did not abuse its discretion in finding that the plaintiffs' delay in bringing this action was not unreasonable and because the defendant had notice that the plaintiffs might later challenge the effect of the language used in the lease. The court, however, considered that a jury trial would be necessary here since reasonable men could differ as to whether the parties intended the lease to be of perpetual duration. The court judged that the defendant's claim that there would not have been a sale except for the providing of a lease of the cement plant premises was unsupported by the evidence.

We agree with the trial court's holding in favor of the plaintiffs. The trial court's view was that what was in-

volved here was a tenancy at will, which was terminated by the plaintiffs.

We consider that, at most, there may have been a tenancy at will. We judge that really no tenancy was created. This does not, however, affect the conclusion of the trial court in favor of the plaintiffs. The result is the same.

There was no real undertaking or promise by the defendants under the "rental agreement." They were to have "use of rental agreement [*sic*] as long as desired." The option given the defendants was unlimited, and the claimed promise was only illusory. Williston states: "One of the commonest kind of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory." (1 S. Williston, Contracts sec. 43, at 140 (3d ed. 1957).) In the Restatement (Second) of Contracts section 77, comment *a*, at 195 (1981), it is observed: *"Illusory Promises.* Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." See also *Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 302.

The trial judge's comment was that the instrument relied on here was "bizarre." It does indeed illustrate what typically is the unwisdom of entrusting the handling of legal affairs to persons other than attorneys or of succumbing to the lure of "do-it-yourself" manuals.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*