AMERICAN DERMATOLOGISTS' MEDICAL GROUP, INC. and Edward B. Frankel, M.D., Plaintiffs,

v.

COLLAGEN CORPORATION and the American Society of Plastic and Reconstructive Surgeons, Inc., Defendants.

No. 83 C 1556.

United States District Court, N.D. Illinois, E.D.

June 21, 1984.

---

Steven A. Weiss, Reuben & Proctor, Chicago, Ill., for plaintiffs.

John P. Scotellaro, Bell, Boyd & Lloyd, Chicago, Ill., Charles T.C. Compton, Palo Alto, Cal., for Collagen Corp.

Allan E. Lapidus, Vedder, Price, Kaufman & Kammaholz, Chicago, Ill., for American Society of Plastic and Reconstructive Surgeons, Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This antitrust case involves the refusal of Collagen Corporation ("Collagen") to supply Dr. Edward B. Frankel ("Frankel") with its sole commercial product, Zyderm [R] Collagen Implant. Frankel alleges that Collagen's refusal to deal with him is part of the concerted actions of the American Society of Plastic and Reconstructive Surgeons, Inc. ("ASPRS") and its members, Collagen and other physician customers, to minimize price and territorial competition in the physician resale market for Zyderm [R] by suppressing physician advertising and refusing to supply Zyderm [R] to physicians who advertise and discount their services. The defendants, on the other hand, argue that Collagen's refusal to deal with Frankel was a unilateral decision based on valid business reasons. Collagen and ASPRS have moved for summary judgment; for the reasons set forth below, their motions are denied.

■ In moving for summary judgment, defendants have the burden of clearly establishing that there is no genuine issue of fact material to a judgment in their favor. The issue(s) of material fact need not be resolved conclusively in favor of the party opposing summary judgment; it is enough for the opposing party to show that sufficient evidence supporting some factual dispute requires a judge or jury at trial to resolve the parties' differing versions of truth. *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10–11 (7th Cir.1979). Moreover, all inferences to be drawn from the facts contained in the affidavits, exhibits and depositions are to be drawn in favor of the non-movant. *Id.; see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). As a general principle, questions of motive and intent are particularly inappropriate for summary adjudication. *Cedillo,* 603 F.2d at 11; *Moutoux v. Gulling Auto Elec-*

*tric,* 295 F.2d 573, 576 (7th Cir.1961). Accordingly, many antitrust actions—"where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot"—are poorly suited for summary judgment. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) (footnote omitted).

In support of their motions for summary judgment, defendants have submitted the affidavits of the President, Executive Vice President and past President of ASPRS and the President and Vice President of Marketing of Collagen. In their affidavits, these officers deny any concerted action between Collagen and ASPRS, and they set forth the purported business reasons for Collagen's refusal to deal with Frankel. In particular, Collagen claims that it decided not to sell Zyderm[R] to Frankel for two reasons: Frankel's overall poor reputation and an earlier disciplinary action against him by the Bureau of Medical Quality Assurance ("BMQA") of the California Department of Consumer Affairs.

Frankel responds first by presenting evidence that Collagen's reasons for refusing to deal with him lack any factual basis. The evidence indicates that Frankel meets all of Collagen's stated eligibility criteria for purchasing Zyderm[R]. Moreover, it suggests that Frankel actually enjoys a good reputation in the medical community, and that the BMQA disciplinary action resulted from organized efforts to "get" Frankel because of his position on advertising by doctors. The evidence also shows that Collagen has dealt with other physicians who have been disciplined by the BMQA. This evidence casts doubt on the explanations offered by Collagen and raises factual questions as to whether Collagen's actions

really were, as it claims, "no more than the reasoned exercise of its independent business judgment." Such contested factual questions concerning Collagen's motives cannot be resolved by summary judgment. *E.g., Bostick Oil Co., Inc. v. Michelin Tire Corp., Commercial Division,* 702 F.2d 1207 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983).[1]

The bulk of Frankel's response consists of substantial evidence which tends to buttress various aspects of his allegations that ASPRS and Collagen acted together to prevent Frankel from obtaining Zyderm[R]. The evidence shows that ASPRS has long been concerned about competition from physicians who are not ASPRS members and has fought especially hard against physicians who advertise. In fact, an investigation of ASPRS by the Federal Trade Commission ("FTC") indicated that ASPRS may have been falsely disparaging the reputation of competent non-members as well as pressuring manufacturers of plastic surgery products not to sell their products to certain doctors. In a memorandum to the FTC, ASPRS even acknowledged its intent to pursue this latter course of conduct, a tactic quite similar to the antitrust violations alleged by Frankel in this case. Other evidence demonstrates that ASPRS, and especially ASPRS's President, Dr. Mark Gorney ("Gorney"), felt animosity for and took actions against Frankel and his advertising.

Frankel has also submitted evidence of Collagen's restrictions on advertising by its physician customers. Until July of 1981, Collagen required each physician with whom it dealt to agree not to advertise *any* product or service. After this date, Collagen replaced this total prohibition of advertising by a ban on advertising the availability of Zyderm[R] by name. Although this ban is more limited, Frankel argues that it

---

**1.** Collagen cites authorities which stand for the proposition that "an affirmative finding of conspiracy is not to be supported simply by labelling a given reason pretextual." *Bruce Drug, Inc. v. Hollister, Inc.,* 688 F.2d 853, 856 (1st Cir.1982). This proposition is irrelevant to the instant case in its present posture. The Court need not affirmatively find that a conspiracy exists, but merely that there are factual questions concerning such a conspiracy, in order to deny the motions for summary judgment. Moreover, as outlined later in this opinion, Frankel does offer other evidence in support of his conspiracy allegations.

still effectively precludes any price advertising of Collagen's unique product. Frankel also points to evidence that, in spite of Collagen's offered explanation that the current restriction on advertising is designed to protect Collagen's trademark, it is the physicians who compete with advertising doctors—rather than Collagen itself—who have pressed for compliance with Collagen's advertising restrictions.

Other evidence relates to the relationship and interactions between Gorney and Collagen. It appears that Collagen retained the ASPRS president as a consultant in various matters, including the marketing and sales of Zyderm[R]. Collagen in turn gave Gorney options to purchase 2,000 shares of the corporation's common stock. Gorney and Collagen's Vice President of Marketing admit that in at least one conversation about the types of doctors who might benefit from using Zyderm[R] and the recent changes in Collagen's physician agreements (which included the restrictions on physician advertising) they also discussed Frankel in particular, including such matters as the BMQA action against Frankel and a televised debate between Gorney and Frankel about advertising by doctors.

The defendants argue that all of Frankel's evidence taken together is insufficient as a matter of law to support a reasonable inference of concerted action between ASPRS and Collagen. They also claim that the Supreme Court's recent decision in *Monsanto Co. v. Spray-Rite Service Corp.*, —— U.S. ——, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), requires that their motions for summary judgment be granted.

We disagree. As we have stated, there are numerous factual questions which are unresolved in this case. Frankel has presented a plausible, albeit somewhat complex, view of the facts. The inferences Frankel draws from these facts are certainly not so far-fetched that a trier of fact should not be allowed to consider them. Defendants' protests as to the circumstantial nature of Frankel's evidence are unavailing. Conspiracy cases almost always involve such evidence, and it was recognized long ago that circumstantial evidence may be sufficient to support a finding of a price-fixing conspiracy. *E.g., Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939).

The Supreme Court's ruling in *Spray-Rite* has less bearing on defendants' summary judgment motions than they suggest. The Court announced the standard of proof of an antitrust conspiracy, holding that to permit the inference of conspiracy

> there must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.

*Spray-Rite*, —— U.S. at ——, 104 S.Ct. at 1473. In opposing the motions for summary judgment, Frankel need not meet this standard of proof.[2] Rather, he must only show that there is enough evidence so that the trier of fact *might* reasonably decide that he met this standard. *See Cedillo*, 603 F.2d at 10–11. Frankel has done this. As the Supreme Court observed in *Poller*, "It may be that upon all of the evidence a jury would be with the respondents. But we cannot say on this record that 'it is quite clear what the truth is.'" *Poller*, 368 U.S. at 472, 82 S.Ct. at 491.

———

Accordingly, the motions of Collagen and ASPRS for summary judgment are denied.[3] It is so ordered.

---

**2.** Unlike Frankel, the plaintiff in *Spray-Rite* was given an opportunity to present his entire case to a jury. Thus, the Court discussed the standard of proof which a plaintiff must satisfy in order to prevail *ultimately,* not to defeat a motion for summary judgment.

**3.** At the next status hearing, in addition to setting a date for the filing of a draft pretrial order, the parties should be prepared to discuss whether meaningful settlement negotiations have been held or are planned to be conducted.