**BURLINGTON COAT FACTORY WAREHOUSE CORPORATION, Plaintiff,**

v.

**ESPRIT DE CORP. and Federated Department Stores, Inc., Defendants.**

**No. 83 Civ. 7393 (KTD)**

United States District Court, S.D. New York.

Nov. 16, 1984.

**1200**

Kassner, Haigney & Thomson, New York City, for plaintiff; Stacy J. Haigney, Denise M. Cossu, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Esprit De Corp.; Fredric W. Yerman, Richard A. De Sevo, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, Arnold & Porter, Washington, D.C., Lois Thompson, New York City, G. Duane Vieth, Murray H. Bring, John Kronstadt, Mark R. Merley, Washington, D.C., Thomas G. Cody and Boris Auerbach, Cincinnati, Ohio, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Burlington Coat Factory Warehouse Corporation ("Burlington") commenced this action against defendants Esprit De Corp. ("Esprit") and Federated Department Stores, Inc. ("Federated") pursuant to section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Defendants now move pursuant to Fed.R.Civ.P. 56 for summary judgment.

Esprit is a manufacturer of women's and children's clothing and accessories. Federated, through several divisions, sells clothing to retail customers. Two of Federated's well-known divisions are Bloomingdale's and Abraham & Straus. Burlington is a retailer of men's, women's, and children's clothing. Burlington's stores sell its merchandise at prices approximately twenty-five percent below those charged by traditional department stores such as those controlled by Federated.

Between August 1982 and March 1983, Burlington submitted eleven orders to Esprit totalling $281,708. Esprit's Appendix, Exh. A (Affidavit of Leon C. Rosenberg) at 2. On average, Esprit filled 46.23 percent of Burlington's orders. *Id.* It is undisputed that in July 1983, Burlington submitted three orders totalling approximately $500,-000. On July 29, 1983, Esprit returned all of Burlington's outstanding purchase orders. Esprit's Appendix, Exh. B. Burlington alleges that the decision by Esprit to not fill Burlington's orders was made after and as a result of a public announcement made by Federated at a June 1983 retailers' conference. Federated apparently announced that any wholesaler who supplied off-price retailers would run the risk of losing Federated's business. *See* Affidavit of Norman Ross, Exh. A (press release).

Burlington alleges that Federated's announcement constituted a "threat of and an invitation by Federated to manufacturers such as Esprit to enter into an agreement and conspiracy in restraint of trade for the purpose of eliminating price competition at the retail level of the apparel market." Complaint ¶ 17. Burlington alleges also that Federated complained directly to Esprit with respect to Burlington. *Id.* ¶ 18.

Esprit asserts that it was neither aware of Federated's announcement nor received complaints from Federated prior to returning Burlington's orders. Esprit claims that its decision to not sell to Burlington was unilaterally arrived at and was based on a desire to promote a certain image to the public. Esprit distinguishes itself from other clothing manufacturers by claiming to promote a "concept" by featuring a complete line of coordinated clothing and accessories to be displayed together rather than by item. *See* Federated's Appendix, Exh. 1 (Deposition of Leon C. Rosenberg) at 59, 74–76, 93–94. According to the national sales manager for Esprit, Leon Rosenberg, Esprit is continually becoming more popular and is increasingly unable to fill a substantial portion of its customers' orders. *Id.* at 56, 74. Thus, Esprit began to implement a program in late 1982 and early 1983 to sell its merchandise to only those stores

who would present its apparel in such a way that would further Esprit's "concept." *Id.* at 74. Apparently, however, Burlington utilizes a " 'no frills' approach" in merchandising its goods; clothing is arranged by item on racks and fixtures. *See* Esprit Appendix, Exh. J (Deposition of Monroe Milstein) at 36–37.

Rosenberg stated at his deposition that he personally reviewed Burlington's July 1983 orders because they were for such a large amount. He investigated the size of Burlington's prior orders and found the July orders to be far in excess of them. Federated's Appendix, Exh. 1 at 54–57. Rosenberg then spoke with the Esprit sales representatives who took Burlington's orders. *Id.* at 57. After learning about the nature of Burlington's stores, Rosenberg stated, the orders were returned. *Id.* at 57–60, 68.

Thereafter, on August 30, 1983, a meeting was held in Esprit's New York showroom. It was attended by Rosenberg, one of the sales representatives who took Burlington's orders, Burlington's general merchandise manager, Norman Ross, and a Burlington sales representative, Elisa Kraemer. *Id.* at 68. Kraemer brought a tape recorder to the meeting concealed in her briefcase and the ensuing conversation was recorded. *See* Federated's Appendix, Exh. 2 (transcript of recording). Rosenberg explained to Kraemer and Ross that Esprit was decreasing the number of accounts it serviced and was evaluating various stores in terms of whether they presented the image that Esprit was seeking to convey. *Id.* Mr. Rosenberg discussed Esprit's decision to stop selling to several full price specialty store chains including "The Limited" to which Esprit had approximately $3 million in annual sales. *Id.* at 6–7. Federated was not mentioned at any point during the conversation.

Thus, Esprit asserts that its decision to terminate its sales to Burlington was unilateral and was based on the fact that (1) Burlington's July 1983 orders were several times larger than prior orders and Esprit's ability to produce merchandise was outstripped by its ability to supply it, and (2) Burlington's method of merchandising did not comport with the image and conceptual approach desired by Esprit. In support of its contentions, Esprit notes that it has refused to sell to full-price retailers who have failed to sell conceptually and that it continues to sell to off-price retailers who do sell conceptually.

Federated seeks summary judgment for the same reasons as are asserted by Esprit. Federated denies that any communication, threats or complaints were conveyed to Esprit. Burlington opposes defendants' motions for summary judgment principally on the ground that they are premature. Plaintiff seeks the denial of the summary judgment motions or, alternatively a continuance pursuant to Fed.R.Civ.P. 56(f) so that discovery may proceed.

## DISCUSSION

### I.

Plaintiff does not state in its papers that a continuance is being sought under Fed.R. Civ.P. 56(f). Instead, Burlington asserts the need for additional discovery as a basis for denying defendants' summary judgment. Nonetheless, I will treat plaintiff's opposition as a motion under Fed.R.Civ.P. 56(f) for a continuance.

Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In the context of antitrust litigation, in determining whether a Rule 56(f) motion should be granted, the factors that have been cited as relevant include (1) "the degree of specificity already offered by the charging party that a conspiracy existed," and (2) the "peripheral or focused nature" of discovery requests. *See Paul Kadair,*

*Inc. v. Sony Corporation,* 694 F.2d 1017, 1030 (5th Cir.1983).

Burlington asserts that there are two depositions of Esprit to be taken; plaintiff seeks to depose Carol Wicks, Secretary-Treasurer of Esprit, and Corrado Federico, President of Esprit's Sports division. Furthermore, Burlington states that discovery with respect to Federated has just commenced. Plaintiff notes that in response to its interrogatories, Federated identified approximately 161 individuals who are employees of either Federated or Esprit but who have had contacts with the other company. Thus, plaintiff wishes to "expeditiously notice the depositions of selected officers and employees of Federated … and attempt to test the *bona fides* of defendants' assertions of unilateral conduct." Burlington's Memorandum at 15. Basically, plaintiff wants to embark on a fishing expedition because the discovery has not thus far resulted in any circumstantial or direct evidence of an illegal agreement or conspiracy.

■ Furthermore, a dilatory plaintiff cannot rely on Rule 56(f). *See Paul Kadair, Inc. v. Sony Corporation,* 694 F.2d at 1031. In *First National Bank of Arizona v. Cities Service Co.,* the Supreme Court stated:

> We do not doubt that, had petitioner introduced some significant evidence that Cities had become a member of the conspiracy …, more extended discovery under Rule 56(f) of Cities' activities subsequent to its refusal to deal with him would have been proper …. But in this case petitioner was attempting, in effect, to obtain discovery of peripheral aspects of Cities' alleged participation in the conspiracy, after having failed, despite already substantial discovery, to obtain any significant evidence of conspiracy …. It is precisely because the discovery obtainable under Rule 56(f) to oppose a motion for summary judgment would normally be less extensive in scope than the general discovery obtainable under Rule 26, that such a manner of proceeding was properly refused here.

391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968); *see also Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981) ("Something more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine material issue of fact.")

■ Burlington filed its complaint on October 7, 1983. Since that time, plaintiff has deposed Leon Rosenberg of Esprit and three Esprit sales representatives. Burlington sought no other discovery for approximately four months and only recently served interrogatories and document requests on Federated. With respect to the plaintiff's wish to depose Wicks and Federico, plaintiff was aware of these individuals at the time of the filing of the complaint yet failed to notice such depositions until recently.

Thus, plaintiff has not been diligent in pursuing discovery but now opposes defendants' motions for summary judgment claiming a need for additional discovery. Yet, plaintiff has not offered any reasons why the discovery it seeks now, which is assertedly critical to plaintiff's case, was not conducted earlier. *See American Lease Plans, Inc. v. Silver Sand Co.,* 637 F.2d 311, 318 (5th Cir.1981). In its Memorandum, Burlington fails to particularize what relevant facts would be developed during the course of further discovery. In addition, for the reasons stated in the following section, I find that the plaintiff's action is groundless. The granting of a continuance under Rule 56(f) has been considered to be inappropriate in cases in which substantial discovery has been conducted, and plaintiff's action appears groundless. *See Donofrio v. Camp,* 470 F.2d 428, 432 (D.C.Cir.1972).

Accordingly, because I find that plaintiff has not been diligent about proceeding with its discovery, that substantial discovery already has been conducted, and that the facts elicited by the discovery completed thus far have not in any way supported

plaintiff's claims, plaintiff's request for a continuance under Rule 56(f) is denied. Thus, I turn to the issue of whether defendants are entitled to summary judgment.

## II.

In order to prevail on a motion for summary judgment, the movant has the burden of establishing that there are no genuine issues of disputed material fact and that he is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). " 'A material issue is one which may affect the outcome of the litigation.' " *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir.1977). Furthermore, in antitrust cases, these "general standards are applied even more stringently." *Beltz Travel Service v. International Air Transport Association*, 620 F.2d 1360, 1364 (9th Cir.1980).

■ Section 1 of the Sherman Act prohibits "contract[s], combination[s] ... or conspirac[ies]." *See* 15 U.S.C. § 1. Unilateral independent action by a manufacturer, however, is not proscribed. "A manufacturer ... generally has a right to deal, refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Service Corp.*, —— U.S. ——, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919)), *reh'g denied*, —— U.S. ——, 104 S.Ct. 2378, 80 L.Ed.2d 850 (1984).

As the Supreme Court stated in *Monsanto:*

> Permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about 'in response to' complaints, could deter or penalize perfectly legitimate conduct .... [C]omplaints about price-cutters 'are natural—and from the manufacturer's perspective, unavoidable—reactions by distributors to the activities of their rivals.' Such complaints, particularly where the manufacturer has

imposed a costly set of nonprice restrictions, 'arise in the normal course of business and do not indicate illegal concerted action.'

*Id.* at 1470 (citations omitted). Thus, the Supreme Court held that "something more than evidence of complaints is needed. There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently." *Id.* at 1471.

■ It is undisputed that there is no direct evidence of an agreement or conspiracy between Federated and Esprit. Nor does Burlington assert that there is any direct evidence of complaints levelled by Federated against Esprit. Instead, Burlington cites, as circumstantial evidence, the proximity of time between Federated's announcement and Esprit's refusal to sell to Burlington. Such evidence alone, however, fails to establish an illegal conspiracy or agreement between Esprit and Federated; it is mere conjecture on the part of Burlington.

In *Monsanto*, the circumstantial evidence, which was held sufficient, included statements by the manufacturer concerning complaints about the distributor's prices, the fact that the manufacturer never before discussed distribution · criteria with the distributor, requests by the manufacturer's representative to the distributor's salesmen to keep prices up, and finally, explicit threats to terminate the distributor unless it raised its prices. *Id.* at 1471. Thus, the Supreme Court found that there was "evidence that tends to exclude the possibility of independent action by the manufacturer and distributor." *Id.*

On the record that has been developed by way of discovery, I can see no "direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.' " *Id.* (citations omitted). Indeed, the fact that Esprit continues to sell to those off-price merchants who market Esprit's products in accordance

with Esprit's "concept" belies plaintiff's claims. Esprit's submissions tend to establish that Esprit had been, even prior to Federated's announcement, implementing a program to have its merchandise sold consistently in a certain style. "Once allegations of a conspiracy have been rebutted by probative evidence showing alternative, legitimate business reasons for the defendants' conduct, to avoid summary judgment the plaintiff must come forward with specific factual support for its allegations." *Program Engineering v. Triangle Publications,* 634 F.2d 1188, 1195 (9th Cir.1980). Plaintiff has not sustained its burden.

Accordingly, defendants' motions for summary judgment are granted. Plaintiff's complaint is dismissed. Defendants are directed to submit judgments on notice.

SO ORDERED.