**MAGID MANUFACTURING CO., INC., Plaintiff,**

v.

**U.S.D. CORPORATION, Defendant.**

**No. 83 C 7244.**

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1987.

Richard D. Harris, Richard Eugene Dick, Max Shaftal, Law Offices of Dick and Harris, Chicago, Ill., for plaintiff.

William G. Schopf, Jr., Michael A. Kahn, Charles S. Bergen, Reuben and Proctor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff Magid Manufacturing Co., Inc. ("Magid") is a disgruntled former distributor of the products manufactured by the defendant U.S.D. Corporation ("U.S.D."). U.S.D. terminated its relationship with Magid in January, 1983 and Magid subsequently filed this lawsuit in which Magid alleges that U.S.D. committed certain antitrust violations, breached a contract with Magid and defrauded Magid. U.S.D. now moves this court to grant it summary judgment with respect to all counts alleged in the complaint. For the following reasons, the court grants the motion.

Magid is an Illinois corporation whose nationwide business includes the manufacture and/or distribution of industrial safety equipment. U.S.D. is a California corporation engaged in the design, manufacture and sale for resale of respiratory equipment and related products. The Survivair division ("Survivair") of U.S.D. manufactures and markets industrial-safety and fire-safety equipment. In 1981, Survivair introduced a new line of industrial safety equipment known as an air-purifying respirator ("APR").

In the spring of 1982, Magid and U.S.D. orally agreed that U.S.D. would sell certain respirator products, including APRs, to Magid for Magid's resale to its customers. The relationship established that spring lasted for approximately eight months, during which time Magid continued to buy U.S.D. products and resell them to its customers. On January 6, 1983, U.S.D. notified Magid that U.S.D. was terminating the relationship between the two companies. Magid contends that U.S.D. terminated its relationship with Magid because other distributors were complaining to U.S.D. that Magid was undercutting the existing price structure for Survivair products. According to Magid, the termination was an act committed in furtherance of a conspiracy between U.S.D. and its other distributors to fix, maintain and stabilize the prices of U.S.D.'s Survivair products. *See* Complaint at 7. U.S.D. rejects Magid's contentions, and maintains that the termination was part of the development of a new distributorship plan designed to protect dealers from the "free riding"[1] of other distributors by ensuring that a dealer was exclusively responsible for a particular geographic region. Since the nationwide character of Magid's business was clearly inconsistent with the new distribution plan, U.S.D. decided to terminate its relationship with Magid.

U.S.D. moves this court for summary judgment on each of the three counts. In order to obtain summary judgment, U.S.D. must clearly establish the absence of any contested material fact, *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983), and all of the evidence must be viewed in a light most favorable to the plaintiffs. *Korf v. Ball State Univ.,* 726 F.2d 1222, 1226 (7th Cir. 1984). According to *Celotex Corp. v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), U.S.D. may discharge its burden by showing the court that there is an absence of evidence to support Magid's case. Although it is routinely recited that summary proceedings are disfavored in complex antitrust cases where issues of motive and intent are pivotal, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), summary judg-

---

1. Often, one distributor will spend money to create consumer interest in a product. Of course, this extra cost is generally passed on to the consumer in the form of a higher price for that product. "Free riding" occurs when a different distributor, who did not incur the consumer-development expense, is able to offer the same product for a lower price and sells the product to a consumer. That consumer buys the product from the free-rider even though the other distributor's development expenses attracted the consumer to the product in the first place.

ment is nonetheless appropriate when it is clear that Magid will be unable to establish an element of the claim at trial. *Products Liability Ins. v. Crum & Forster Ins. Companies,* 682 F.2d 660, 663 (7th Cir. 1982).

# I

## Count I: Resale Price Maintenance

 Magid alleges in Count I that U.S.D. conspired with other distributors of U.S.D. products to maintain the price of those products in the market for industrial-safety equipment. Concerted action between manufacturer and distributors to set prices has been per se illegal since the early years of national antitrust enforcement. *See Monsanto v. Spray-Right Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984) (citing *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 404–409, 31 S.Ct. 376, 383–385, 55 L.Ed. 502 (1911)), *reh'g denied,* 466 U.S. 994, 104 S.Ct. 2378, 80 L.Ed.2d 250 (1984). But evidence that falls short of proving an agreement to fix prices is insufficient to establish an antitrust violation. *Monsanto,* 104 S.Ct. at 1470. A manufacturer may refuse to deal with anyone who fails to adhere to its pricing policies if that refusal is taken independently and without conspiratorial purpose. *Id.* The Supreme Court has not interpreted Section 1 of the Sherman Act, 15 U.S.C. § 1 (1986) as prohibiting the mere exchange of information between a manufacturer and its distributors. *See id.* To bar a manufacturer from acting solely because the information upon which it acts originated as a price complaint would create an irrational dislocation in the market. *Id.; Morrison v. Murray Biscuit Co.,* 797 F.2d 1430, 1439 (7th Cir. 1986).

 Consequently, something more than evidence of complaints is needed. *Monsanto,* 104 S.Ct. at 1471. According to *Monsanto v. Spray-Rite Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), *reh'g denied,* 466 U.S. 994, 104 S.Ct. 2378, 80 L.Ed.2d 250 (1984), there must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently. *Id.* The antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective. *Id.* If the defendant presents evidence of a legitimate independent business reason for the plaintiff's termination, the plaintiff must then introduce significant probative evidence of a conspiracy. *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Weit v. Continental Illinois National Bank and Trust Co. of Chicago,* 641 F.2d 457, 462 (7th Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

U.S.D. has presented substantial evidence of a legitimate independent business reason for its termination of Magid. In August of 1982, approximately two months after U.S.D. began doing business with Magid, Michael Chapman joined U.S.D. as Director of Marketing with total and sole authority to develop and implement new marketing programs. Chapman Dep. I at 12; U.S.D.'s Interrogatory Response No. 18 at 23. In August 1982, the safety and diving divisions of U.S.D. were both experiencing significant sales downturns which would eventually culminate in the first operating loss for U.S.D. in over ten years. Int. Resp. No. 18 at 23. In addition, the new APR line in the Survivair division was experiencing no sales growth and a very disappointing level of sales less than 12 months after the line's introduction. *Id.*

Chapman concluded that the line's failures were attributable to a defective distributor network. *Id.* Prior to Chapman's arrival, no written distributorship agreements specifying the mutual duties and obligations undertaken by U.S.D. and its distributors existed, nor did U.S.D. impose any geographic restrictions on its distributors. Scott Dep. at 19; Int. Resp. No. 18 at 24. In order to decrease free-riding and increase the level of distributor commit-

ment to U.S.D. product lines, Chapman decided to implement a new plan featuring formal distributorship agreements that included sales quotas, performance standards, and geographical boundaries for the distributors. *Id.* at 23–26. Believing that Magid's nationwide marketing efforts were fundamentally incompatible with this new marketing plan, Chapman terminated Magid in January 1983. *Id.*

Having presented substantial evidence of a legitimate business reason consistent with unilateral decisionmaking, U.S.D. argues that no significant probative evidence of a conspiracy to maintain prices exists. Unless Magid presents significant probative evidence of its conspiracy claim, summary judgment is appropriate. *See Celotex Corp.*, 106 S.Ct. at 2554; *Cities Service Co.*, 391 U.S. at 290, 88 S.Ct. at 1593. To repeat, something more than evidence of complaints is needed. *Monsanto*, 104 S.Ct. at 1471.

To support its conspiracy claim, Magid relies heavily on the existence of complaints to U.S.D. about Magid from other distributors regarding Magid's pricing practices. Specifically, Magid cites a complaint made by the Texas distributor Briggs Weaver in August or September of 1982,[2] complaints made at a safety show by Continental Safety Equipment Co. from St. Paul, Minnesota and Pagel Safety Equipment Co. ("Pagel") from Milwaukee, Wisconsin,[3] a letter from Pagel to U.S.D. demanding that U.S.D. " 'clean-up' this marketplace,"[4] and a complaint from an unnamed Tennessee distributor.[5] Magid also cites a number of general references to distributor concerns about Magid's marketing practices. *See, e.g.,* Scott Dep. at 21. While the court does not hold that this evidence of complaints has no probative value at all, Magid must introduce additional evidence sufficient to support a finding

2. N. Cohen Dep. at 144–45.

3. Seymour Dep. at 119–122.

4. Plaintiff's Exhibit No. 50.

5. N. Cohen Dep. at 158–59.

of an unlawful contract, combination, or conspiracy in order to survive U.S.D.'s motion. *Monsanto*, 104 S.Ct. at 1471 n. 8.

The parties do not dispute that Magid has no direct evidence of such an agreement. Instead, aside from the complaints, Magid relies on the possible inferences from eight "unresolved considerations" to overcome U.S.D.'s motion for summary judgment.[6] *See* Plaintiff's Memorandum in Opposition to Defendant's Combined Motion for Summary Judgment and to Dismiss at 29–30. To show conspiracy indirectly the plaintiff must demonstrate that the firm is behaving in a way that is inconsistent with unilateral decisionmaking. *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 806 F.2d 722, 726 (7th Cir. 1986) (Easterbrook, J.) (citing *Monsanto* and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986)). This means showing that the defendant acted in a way that, but for the hypothesis of joint action, would not be in its own interest. *Id.* If the evidence is consistent with the hypothesis that the firm at the top of the vertical chain designed the restrictions for its own purposes, an inference of conspiracy is inappropriate. *Id.*

U.S.D. has already presented substantial evidence of a legitimate business reason for Magid's termination. Magid has presented the court with no evidence that is inconsistent with this business reason or which excludes the possibility that U.S.D. and its distributors acted independently. Magid alleges that after its termination by U.S.D., U.S.D. substituted a company called "Safeco" for Magid as the distributor for one account. Magid alleges Safeco had complained to U.S.D. about Magid's pricing practices prior to Magid's termination. Plaintiff's Memorandum in Opposi-

6. Magid's also relies on the fact that no other distributors had been the subject of complaints coupled with dealer threats to discontinue doing business with U.S.D. if U.S.D. did not terminate the other distributor. This court also considers this to be reliance on complaints and therefore insufficient under *Monsanto*.

tion at 19. The court, however, cannot find any evidence of a Safeco complaint to U.S.D. in the record, nor has Magid pointed to any such evidence. Even if such evidence existed, it would not exclude the possibility of unilateral action by U.S.D. because a manufacturer has an interest in the continued distribution of its product after it terminates a relationship with a distributor.

Magid further claims that U.S.D. was satisfied with Magid's performance, and that U.S.D. has not terminated a relationship with another productive distributor. But U.S.D. does not contend that it terminated its relationship with Magid because of Magid's poor performance. Instead, U.S.D. purports to have terminated Magid because of Magid's national character. Magid has presented no evidence of a national distributor like Magid which U.S.D. failed to terminate its relationship with.[7]

Magid contends that prior to its bringing this suit in late 1983, no other distributor had ever been terminated. This fact, however, is not inconsistent with Chapman's distributorship plan because Magid was the only distributor of its kind that he knew of that operated on a nationwide basis with no territorial restriction. See Chapman Dep. II at 59–60.

▮ Magid also attacks U.S.D.'s purported reasons for termination, calling them a "pretext" and claiming it has impeached this explanation "item by item." Plaintiff's Memorandum in Opposition at 30. Assuming that Magid has established that U.S.D.'s explanation is a mere pretext, in this circuit that alone is not sufficient to establish the conspiracy element of Magid's claim. See Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc., 582 F.2d 1068, 1070 (7th Cir.1978) (even if the plaintiff could show that the defendant's announced business reasons were not legitimate, such showing would not satisfy plaintiff's burden of establishing the existence of the conspiracy element essential to

its prima facie antitrust case). See also Moffat v. Lane Co., Inc., 595 F.Supp. 43, 49 (D.Mass.1984) (the fact that a business reason advanced for action against the plaintiff is pretextual does not without more justify the inference that the conduct was the result of a conspiracy). But see Fragale & Sons Beverage Co. v. Dill, 760 F.2d 469, 474 (3rd Cir.1985) (the evidence of pretext, if believed by a jury, would disprove the likelihood of independent action on the part of the defendant).

More importantly, Magid has not established that U.S.D.'s purported explanation is inconsistent with the facts. Although Magid cites deposition testimony for the proposition that other distributors may have been operating nationwide, see Chapman Dep. I at 59–64, Chapman testified that he did not know that any other distributor was operating nationwide and Magid has not presented any evidence to create a genuine issue with regard to that fact. See id.

▮ Magid also argues a number of other facts that make U.S.D.'s allegation that U.S.D. was acting pursuant to its new distributorship plan slightly less likely. For example, U.S.D. has presented no written evidence that existed prior to January 1983 of a new distributorship plan consistent with U.S.D.'s explanation. The court, however, is not determining whether there is a genuine issue of material fact with respect to U.S.D.'s explanation; instead, the court is searching for evidence in the record to support a finding of conspiracy. When confronted with the contention that no evidence of a conspiracy exists, the burden is on the antitrust plaintiff to present some evidence that tends to exclude the possibility of independent action by the manufacturer. See Monsanto, 104 S.Ct. at 1471. In this case, since the defendant has offered legitimate business reasons for its actions, reasons the plaintiff cannot refute directly, the plaintiff must present significant probative evidence tending to support

---

**7.** This also explains why U.S.D.'s purported business reason for termination is not inconsistent with Magid's other "unresolved considera-

tion", i.e. the fact that no other distributors complained about were ever terminated.

its conspiracy claim. *See Cities Service Co.,* 391 U.S. at 290, 88 S.Ct. at 1593. The difference between "some" and "significant probative" evidence becomes purely one of semantics in a case like this, for Magid has not presented *any* evidence that tends to exclude the possibility that U.S.D. and its distributors acted independently.

■ Finally, Magid's reliance on the opinion of U.S.D.'s former regional sales manager suffers from the same defects as Magid's reliance on other evidence, i.e. it does not tend to exclude the possibility of independent action. Without citation to the record, Magid claims a regional sales manager testified that Magid's termination was based on the "threat-coupled" complaint of other distributors around the country. Plaintiff's Memorandum in Opposition at 30. Even assuming this opinion is correct, the fact that a manufacturer terminated a distributor in response to complaints by other distributors is not enough. *Monsanto,* 104 S.Ct. at 1468, 1470–71. *But see Robart Mfg. Co., Inc. v. Loctite Corp.,* No. 83 C 7288 (N.D.Ill. Jan. 9, 1986) (Marshall, J.) [Available on WESTLAW, DCTU database] (proof of a causal nexus between complaints and termination could be sufficient). As this court has already noted, a manufacturer should not be discouraged from using the information it obtained from a distributor as the manufacturer sees fit. *See* discussion, *supra* at 4. To establish the requisite conspiracy element, the plaintiff must introduce some evidence of a "meeting of the minds." *Monsanto,* 104 S.Ct. at 1471 n. 9. Here, Magid has failed to do so.

Courts have not been hesitant to grant summary judgment on behalf of a defendant in cases where the plaintiff has failed to satisfy the *Monsanto* standard for a resale-price-maintenance case. *See, e.g., O.S.C. Corp. v. Apple Computer, Inc.,* 792 F.2d 1464, 1467 (9th Cir.1986); *Landmark Development Corp. v. Chambers Corp.,* 752 F.2d 369, 371–72 (9th Cir.1985); *Burlington Coat Factory Warehouse v. Espirit De Corp.,* 597 F.Supp. 1199, 1203 (S.D.N.Y.1984), *rev'd on other grounds,* 769 F.2d

919 (2d Cir.1985); *Gillette Tire Jobbers of Louisiana, Inc. v. Appliance Industries, Inc.,* 596 F.Supp. 1277, 1279 (E.D.La.1984); *Moffat,* 595 F.Supp. at 49. Summary disposition of antitrust cases avoids the expensive and time-consuming trial work associated with antitrust litigation and deters the institution of vexatious suits. *See Lupia v. Stella D'Oro Biscuit Co., Inc.,* 586 F.2d 1163, 1167 (7th Cir.1978); *Windy City Circulating Co., Inc. v. Charles Levy Circulating Co.,* 550 F.Supp. 960, 963 (N.D.Ill. 1982) (McGarr, J.).

Magid finally argues that the *Monsanto* standard is not the appropriate standard to apply to a motion for summary judgment. Plaintiff's Memorandum in Opposition at 31. Magid argues that the *Monsanto* Court addressed the question of what the appropriate standard should be for a motion for directed verdict, not summary judgment. Citing two cases decided in this district, *see Marco Holding Co. v. Lear Siegler, Inc.,* 606 F.Supp. 204, 209–10 (N.D. Ill.1985) (Will, J.) and *American Dermatologists' Medical Group, Inc. v. Collagen Corp.,* 595 F.Supp. 79, 82 (N.D.Ill.1984) (Aspen, J.), Magid claims that it need only show that the trier of fact *might* reasonably decide that it met the *Monsanto* standard. In further support of this proposition that the relevant standard of proof is lower than in *Monsanto,* Magid notes the Supreme Court's admonition in *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles. "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Poller,* 368 U.S. at 473, 82 S.Ct. at 491.

Magid is correct when it states that the *Monsanto* Court outlined the standard of proof required to survive a motion for directed verdict. *Monsanto,* 104 S.Ct. at 1468. The question before this court is whether the same standard should apply to

motions for summary judgment. The court decides it should. The theory underlying a motion for summary judgment is substantially the same as that underlying a motion for directed verdict. 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.04[2] (2d ed. 1985); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2713.1 (2d ed. 1986). The essence of both motions is that there is no genuine issue of material fact to be resolved by the trier of facts, and that the movant is entitled to judgment on the law applicable to the established facts. 6 J. Moore, *supra*, at ¶ 56.04[2]; 10 C. Wright, *supra*, at § 2713.1. In the case of *either* motion, credibility determinations are to be left to the jury. 5A J. Moore, *supra*, at ¶ 50.02[1]; 6 J. Moore, *supra*, at ¶ 56.04[2]. Considering the similarity of the analysis that the court must perform for these motions, it is logical that the same standards of proof should apply to both motions.

The court's holding is consistent with the concerns of the Supreme Court in *Monsanto*. The *Monsanto* Court feared that permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about "in response to" complaints, could deter or penalize perfectly legitimate conduct. *See Monsanto*, 104 S.Ct. at 1470. Complaints about price-cutters are natural and taken alone do not indicate illegal concerted action. *Id.* Surely the Supreme Court did not intend that a suit based solely on the existence of complaints should survive a motion for summary judgment and require the costs of a trial when no evidence exists that will allow the plaintiff to overcome a motion for directed verdict.

The court respectfully refuses to adopt the standard set forth in *Marco Holding* and *Collagen Corp.*[8] For the reasons already discussed, the court grants U.S.D.'s motion for summary judgment on Count I.

## II

### Count II: Breach of Contract

In Count II, Magid alleges that U.S.D. breached a contract between Magid and U.S.D. when U.S.D. terminated its relationship with Magid. U.S.D. has moved for summary judgment on this count on a number of different grounds. The court grants the motion because the undisputed evidence demonstrates that several essential terms of the alleged contract were neither discussed by the parties nor the subject of any agreement. Under such circumstances, no valid and enforceable contract exists.[9] *See, e.g., Kraftco Corp. v. Kolbus*, 1 Ill.App.3d 635, 274 N.E.2d 153, 155 (4th Dist.1971).

▆▆▆ For the court to find that an enforceable contract exists, the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied. *Kraftco*, 274 N.E.2d at 155. When the material terms and conditions are not ascertainable no enforceable contract is created. *Id.* The court will not supply missing essential terms to an alleged contract. *See O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill.App.3d 11, 8 Ill.Dec. 78, 80, 365 N.E.2d 316, 318 (3d Dist. 1977).

In late spring and early summer of 1982, U.S.D. and Magid orally agreed that U.S.D. would sell Magid certain respirator products for resale. During the conversations that led to the agreement, the parties did not discuss, much less agree on, certain essential contract terms. The parties did not discuss the duration of the proposed relationship or how the relationship could be terminated. *See* N. Cohen Dep. at 87, 92; R. Cohen Dep. at 89; Seymour Dep. at 90–91; Scott Dep. at 67. The parties did not discuss sales quotas or other perform-

---

**8.** This court is not alone in adopting the *Monsanto* standard for a motion for summary judgment. In all the cases cited earlier in which the courts granted a motion for summary judgment because the evidence showed nothing more than the existence of complaints, the courts adopted the *Monsanto* standard. *See supra* at 331.

**9.** The parties agree that Illinois law applies in this case.

ance standards to be imposed on Magid as part of the agreement, nor did they discuss the extent and types of services Magid would be required to perform under the agreement. *See* N. Cohen Dep. at 86–87; R. Cohen Dep. at 88–89.

 Under Illinois law, terms such as duration and sales quotas are considered essential terms of an agreement between a manufacturer and a distributor. *See Xtra Value Imports,* 8 Ill.Dec. at 80, 365 N.E.2d at 318; *Kraftco,* 274 N.E.2d at 155. Magid cites *Dwyer v. Graham,* 110 Ill.App.3d 316, 66 Ill.Dec. 26, 31, 442 N.E.2d 298, 303 (2d Dist.1982), *rev'd,* 99 Ill.2d 205, 75 Ill.Dec. 680, 457 N.E.2d 1239 (1983) for the proposition that where there is a conflict in the evidence with respect to the intention of the parties as to a contract's duration, it is improper necessarily to conclude that the contract is void for uncertainty; instead, the issue is properly a jury question. Plaintiff's Memorandum in Opposition at 41. In *Dwyer v. Graham,* 99 Ill.2d 205, 75 Ill.Dec. 680, 682, 457 N.E.2d 1239, 1241 (1983), however, the Supreme Court of Illinois expressly overruled the Appellate Court of Illinois, Second District on this issue and held that a contract of an indefinite nature is illusory and therefore unenforceable.

For the foregoing reasons,[10] the court grants U.S.D.'s motion for summary judgment on Count II.

### III

### Count III: Fraud and Disparagement

In Count III, Magid alleges both a fraud and a disparagement claim. U.S.D. moves this court to dismiss Count III for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, to award U.S.D. summary judgment on Count III pursuant to Rule 56 of the Federal Rules.

 Magid's disparagement claim apparently is based on the contention that U.S.D.'s termination of its business rela-

tionship with Magid "has, by implication, raised the specter of wrongdoing on the part of [Magid], notwithstanding the absence of actual wrongdoing on the part of [Magid]." Complaint ¶ 44 at 21. In Illinois, however, there is no common law cause of action for commercial disparagement. *National Educational Advertising v. Cass Student Advertising, Inc.,* 454 F.Supp. 71, 73 (N.D.Ill.1977) (McGarr, J.); *American Pet Motels v. Chicago Veterinary Medical Ass'n.,* 106 Ill.App.3d 626, 435 N.E.2d 1297, 1302 n. 2 (1st Dist.1982). The court consequently dismisses the disparagement claim for failure to state a claim upon which relief can be granted.

 Rule 9(b) of the Federal Rules requires that "the circumstances constituting fraud ... be stated with particularity." Courts in this district have interpreted Rule 9(b) as requiring that the complaint allege the time, place and substance of the allegedly false representation as well as the identity of the individual making the false representation. *See Hagstrom v. Breutman,* 572 F.Supp. 692, 697 (N.D.Ill.1983) (Will, J.); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 540 (N.D.Ill.1981) (Bua, J.). The purpose of the specificity requirement is to give the defendant adequate notice of the fraud claimed. *Baselski,* 514 F.Supp. at 540. The plaintiff's complaint alleges none of the aforementioned specific facts. Therefore, the court dismisses the fraud claim pursuant to Rule 12(b)(6) as well.

### Conclusion

The court grants U.S.D.'s motion for summary judgment on Counts I and II. The court also grants U.S.D.'s motion to dismiss Count III and dismisses the case.

---

**10.** The court does not address the other grounds for dismissal argued by U.S.D.