THE JOLIET BOTTLING COMPANY, Appellant, *vs.* THE JOLIET CITIZENS' BREWING COMPANY, Appellee.

*Opinion filed April 18, 1912.*

1. CONTRACTS—*when an executory contract is terminable at the will of either party.* An executory contract whereby a brewing company agrees to furnish beer to a bottling company is terminable at the will of either party, where no definite time is fixed during which the contract shall continue in force.

2. SAME—*when contract lacks mutuality.* An executory contract between a brewing company and a bottling company lacks mutuality where the only obligation incurred by the bottling company is to pay for, bottle and market the beer as the brewing company's product so long as it furnished beer satisfactory in quality and in such quantities as the trade demanded, thus leaving it in the power of the bottling company to terminate the contract at any time, either by claiming the beer was not satisfactory or by so decreasing or increasing its demand that the performance of the contract by the brewing company would be either unprofitable or impossible.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

GARNSEY, WOOD & LENNON, and COLL McNAUGHTON, for appellant.

P. C. HALEY, and ROBERT E. HALEY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was brought by appellant, against appellee, to recover damages for the breach of a contract set out *in hæc verba* in the declaration. The contract is as follows:

"Memorandum of agreement made this 23d day of August, 1905, by and between Joliet Citizens' Brewing Company, a corporation of Illinois, and the Joliet Bottling Company, a corporation of Illinois, both of Joliet, Will county, Illinois.

"*Witnesseth*—That for and in consideration of the sum of one dollar, receipt whereof is hereby acknowledged, and in further

consideration of the premises hereinafter set forth, Joliet Citizens' Brewing Company (hereinafter called the brewing company) agrees to brew for the Joliet Bottling Company (hereinafter called the bottling company) two special brews of beer especially adapted for bottling purposes, to guarantee them as to quality, and to deliver the same to the said bottling company at their works at the price of six dollars and thirty-five cents ($6.35) a barrel for the first and five dollars and twenty ($5.20) a barrel for the second quality. Said brewing company agrees to deliver said beer to said bottling company in sufficient quantities to supply the said bottling company's demand for either or both kinds, and agrees not to bottle nor cause to be bottled, nor to furnish to any other person, firm or corporation, beer of any quality for bottling so long as the said bottling company is bottling the beer of the said brewing company. Said brewing company agrees that if at any time it shall appear that a discount from the above terms for cash can be made to said bottling company, it, the said brewing company, will give said discount. Said brewing company further agrees to furnish to said bottling company, during the first three months of its operation, such advertising novelties, not to exceed in value the sum of $500, as the trade may demand or warrant, and thereafter, if the trade shall warrant, to furnish other and further advertising novelties to said bottling company as may be agreed upon.

"In consideration of the above, said bottling company agrees to bottle the beer of said brewing company, as aforesaid, and to pay the price, as aforesaid, so long as said brewing company shall continue to furnish to said bottling company beer of satisfactory qualities, as aforesaid, in such quantities as the trade shall demand, and to market the same as the product of said brewing company. Said bottling company further agrees to pay for such beer according to the terms hereinbefore set forth, and to make all settlements therefor with said brewing company as follows: Upon the 5th of each month for all beer delivered by said brewing company to said bottling company from the 16th to the last of the preceding month; upon the 20th of each month for all beer, as aforesaid, from the first to the 16th of the same month.

"This agreement is made in pursuance of a memorandum entered into and signed by the parties hereto in the persons of W. O. Bates and Mike Kahn upon August 14, 1905, at Joliet, Illinois.

"Witness the hands and corporate seals of the parties hereto, the day and year above written, in duplicate."

The declaration consisted of one count, and alleged that on the first day of July, 1905, appellee was possessed of and operating a brewery in the city of Joliet and was preparing to manufacture beer of various kinds and qualities for sale;

that on the first day of August W. O. Bates, president of appellant, and Michael Kahn, president of appellee, entered into an arrangement whereby Bates agreed to organize a corporation for the purpose of bottling the beer of appellee, and that in pursuance of said arrangement the appellant corporation was organized on August 20, 1905, and that on the 23d day of August appellant and appellee entered into the written agreement above set out. The declaration further alleged that pursuant to the agreement appellant leased premises in the city of Joliet, incurring an obligation to pay $5000 rent therefor; that said premises were secured by and with the advice and counsel of the officers of appellee, and appellant immediately commenced to, and did, erect and set up machinery upon said premises for the sole purpose of bottling beer manufactured by appellee for market, and in doing so expended the sum of $40,000, all of which was done under the advice and counsel of officers and agents of appellee. The declaration further averred that on December 1, 1905, appellant commenced bottling beer made by appellee and selling the same, and continued to do so until the 10th day of October, 1906, at which time appellant had a number of orders on its books, to-wit, five hundred, for beer of appellee bottled by appellant; that during a portion of the period appellant was bottling and selling the beer appellee furnished it some advertising matter and counseled with and assisted appellant in bottling beer and getting it in condition for the market. The declaration further averred that during said time the beers furnished appellant by appellee failed in quality, and by and with the advice and consent of the officers and agents of appellee appellant secured from other sources, at great expense, beers of a standard quality and bottled and sold the same as the product of appellee until its beers again assumed a standard quality, and that this was done for the purpose of keeping up the standard of appellee's beers and caused appellant expense and loss of profits. It is further alleged that on the 22d day of

September, 1906, appellee wrongfully and without sufficient cause terminated its agreement with appellant and would not thereafter carry out and perform the same although requested so to do by appellant, whereby the plant and factory of appellant were shut down and rendered useless and appellant was unable to fill the orders on its books, and was deprived of a large sum of money, to-wit, the sum of $50,000, which it had expended in the completion and maintenance of its said plant. The damages are laid at $100,000.

The trial court sustained a general demurrer to the declaration, and appellant electing to abide by its declaration, judgment was rendered against it for costs. It thereupon prosecuted an appeal to the Appellate Court for the Second District. That court affirmed the judgment of the trial court and granted a certificate of importance, and the case is brought here for further review.

The question presented for decision is whether the contract between appellant and appellee was valid and binding and capable of being enforced. Appellee's contention is that it is void for want of mutuality; that the period of its duration is not fixed but is indefinite, and it was therefore terminable at the will of either of the parties. An examination of the contract satisfies us that these positions are well taken. By the contract appellee agreed to deliver beer to appellant in sufficient quantities to supply appellant's demand, and not to bottle or cause to be bottled, or to furnish to any other person, firm or corporation, beer for bottling so long as appellant was bottling appellee's beer. Appellee further agreed to furnish appellant, during the first three months of its operation, such advertising novelties, not to exceed the value of $500, as the trade might demand or warrant, and thereafter, if the trade warranted, to furnish other advertising novelties as might be agreed upon. The only thing the contract bound appellant to do was to pay the price agreed upon and bottle the beer of appellee and to market the same as the product of appellee so long

as it furnished beer satisfactory in quality and in such quantities as the trade demanded. No mention is made of any period of time the agreement should continue in force. No maximum or minimum quantity is stipulated in the agreement, but the quantity to be delivered is such as shall be sufficient to supply appellant's demand. Under this provision appellant might demand a quantity so small as to make it impracticable for appellee to manufacture it, or it might demand such large quantities as to be wholly beyond the capacity of appellee. The quality of the beer was to be satisfactory to appellant. Under this provision of the agreement appellant had the option of refusing to accept beer from appellee, at its pleasure, upon the ground that it was not satisfactory. (*Brown* v. *Foster,* 113 Mass. 136; 18 Am. Rep. 463; *Zaleski* v. *Clark,* 44 Conn. 218; 26 Am. Rep. 446; *Gibson* v. *Cranage,* 39 Mich. 49; 33 Am. Rep. 351.) It cannot be .doubted, we think, that the contract was unilateral and void for want of mutuality under repeated decisions of this and other courts. (*Vogel* v. *Pekoc,* 157 Ill. 339; *Higbie* v. *Rust,* 211 id. 333; *Bailey* v. *Austrian,* 19 Minn. 535; *Crane* v. *Crane & Co.* 105 Fed. Rep. 869; *Davie* v. *Lumbermen's Mining Co.* 53 N. W. Rep. 625.) Furthermore, no time being fixed during which the agreement should continue in force, it was terminable at the will of either party. *Davis* v. *Fidelity Fire Ins. Co.* 208 Ill. 375; *Orr* v. *Ward,* 73 id. 318; *Irish* v. *Dean,* 39 Wis. 562.

Appellant relies upon the rule that where a contract is ambiguous and has been interpreted by the parties to it, courts will regard the interpretation placed upon the contract by the parties themselves. This rule can have no application to a construction of the contract before us in this case because it is not ambiguous, and the intention of the parties to it is not to be determined by evidence *aliunde* but by the language employed in the contract itself.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*