KRAFTCO CORPORATION, Plaintiff-Counter-Defendant-Appellee, *v.*
RAYMOND KOBLUS, d/b/a K & M DISTRIBUTING COMPANY,
Defendant-Counter-Plaintiff-Appellant.

(No. 11466;

Fourth District—October 8, 1971.

Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, of Bloomington, (William M. Goebel, of counsel,) for appellant.

Noble, Brown & Sheerin, of Chicago, and Thomson, Thomson & Mirza, of Bloomington, (Narcisse A. Brown and James G. Walker, of counsel,) for appellee.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

This is an appeal from an order of the trial court entering judgment on the complaint and dismissing a counterclaim filed by a distributor, Raymond Kolbus, against Kraftco, a manufacturer. The complaint was filed alleging that Kolbus, the distributor, failed to pay Kraftco, the manufacturer, for certain items purchased from it. The answer admitted failure to pay for items purchased, but alleged a setoff. A counterclaim was filed with the answer asserting that there was a setoff by reason of a breach of contract, and amended twice. The trial court on motion entered judgment for the Plaintiff on the complaint and on motion dismissed the second amended counterclaim for failure to state a cause of action.

The second amended counterclaim alleges the following facts. Kraftco is the owner and manufacturer of Sealtest products through its wholly

owned subsidiary, Sealtest Foods. Sealtest is alleged to be the agent of Kraftco. Kolbus is a distributor of Sealtest products. In 1959, Kolbus, prior to the purchase of the distributorship from a third party, conferred with employees and agents of Sealtest pertaining to the purchase of this distributorship. In these conferences, employees of Sealtest represented that Kolbus would continue as the distributor of Sealtest, that Sealtest would see to it that the territory was exclusive, that Sealtest would assist Kolbus in case of a desire to sell the distributorship, that Sealtest would stand behind the purchasers so that they would have something to sell and that Sealtest saw to it that their distributors were kept satisfied. Kolbus agreed at this time with Sealtest to distribute its products and to use his best efforts in so doing. Kolbus thereafter purchased the distributorship from this third party. A portion of the price was paid for the good will of the business. It is alleged that Kolbus thereafter over a period of ten years, invested approximately $43,000.00 in the business and sold over $2,000,000.00 worth of products for Sealtest. In April and May of 1969, Kolbus attempted to sell this distributorship to a third party. This third party conferred with Sealtest and was informed by Sealtest that it could not guarantee the purchaser the distributorship for the reason that the company was thinking of distributing its products itself. Kolbus then conferred with Sealtest and was informed similarly that the company could not assure the distributorship to the prospective purchaser. Approximately two months thereafter, in June of 1969, Kraftco, without any notice to Kolbus, terminated the distributorship. The refusal to continue to furnish dairy products to Kolbus was alleged as breach of and a violation of the agreement between Kraftco and Kolbus. The breach was alleged to have been done intentionally and maliciously and punitive and compensatory damages are sought.

▮ The posture of the parties on this appeal is directed against the order of the trial court which struck the counterclaim. The briefs of the parties raised three issues—mutuality of obligation, Statute of Frauds and punitive damages. The trial court in dismissing the counterclaim, did not state the reasons for its dismissal. For the purpose of this appeal, those facts well pleaded in the counterclaim will be taken as true; however, conclusions of law or fact unsupported by allegations of fact are not admitted. *Gordon E. Adams v. J. I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1.

▮ It is basic in the formation of a contract that the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied. It is stated in *Lee Shell Co., Inc. v. Model Food Center, Inc.*, 111 Ill.App.2d 235, 250 N.E.2d 666, on p. 244:

"It is basic contract law that the terms of the contract must be reasonably certain; and when the material terms and conditions are not ascertainable, no enforceable contract is created."

Kolbus, in this case, alleged as a contract statements which were made to him in very general terms. At the time of the purchase of the distributorship from a third party, he had a conversation with agents of the manufacturer. The statements made were that the distributorship could be purchased, that Sealtest stood behind its distributors and that Sealtest would aid in case of a subsequent sale of the distributorship. These representations alleged do not appear to have the strength of a contractual commitment and appear as general statements made by a third party on inquiring as to what would be done if the purchase was consummated. Kolbus did purchase the distributorship and did for ten years act as a distributor. These representations appear informal and do not set forth terms of any purported agreement. Such questions as duration, prices, area, products, quotas, etc. are not alleged. This Court areas with the statements contained in *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill.App.2d 231, 161 N.E.2d 875 on page 236:

"Such contracts extending for a long duration and resting entirely on parol should have for their basis definite and certain mutual promises. The words and the manner of their utterance should not be of that informal character which expresses only long continuing good will and hopes for eternal association."

█ It is not up to the court to write an agreement for the parties. Although terms of the contract may be implied in certain circumstances, writing the total contract for the parties is without the purview of the courts. It would appear to this court certainty is lacking in this purported agreement of 1959 and the essential terms are unsettled. The allegations merely set forth utterances of an informal character and to attach to them the binding effect of a contractual commitment would be improper.

█ Both parties have devoted much of their argument to the question of mutuality. The purported agreement was alleged to be allowing Kolbus to purchase a distributorship and in assisting Kolbus in any future sale of the distributorship that he might want to make. Kolbus in turn agreed to use his best efforts to sell the products. Mutuality of obligation is necessary for the contract to be enforceable. *Schoen v. Caterpillar Tractor Co.*, 103 Ill.App.2d 197, 243 N.E.2d 31. Mutuality of obligation is defined as follows:

"Mutuality of obligation means that both parties to an agreement are bound or neither is bound. A contract in its nature and character and according to the intention of the parties should involve and

impose a reciprocity of obligation and duty." Illinois Law & Practice, Contracts, Section 7.

In *Goodman v. Motor Products Corporation,* 9 Ill.App.2d 57, 132 N.E.2d 356, the court held that a distributorship contract giving the Plaintiff the exclusive right to sell products of the Defendant outside the United States as long as he devoted his full time and attention thereto and devoted his best efforts to sell the product was lacking in mutuality. The contract in that case was terminated after notice and a suit was brought for its alleged wrongful termination. The court holding that the contract lacked mutuality stated on page 68 as follows:

"Assuming that the oral agreement which Goodman alleged, and to which he testified, was made, it is one which was to run without a prescribed limit and which could be terminated only by Goodman in his uncontrolled discretion and was binding on defendant until Goodman of his own volition ceased to devote his time and efforts to selling and distributing Deepfreeze products. . . . Under the doctrine of mutuality, such a contract, insofar as it was executory, could be terminated by defendant by due notice at any time as to all or any part of Goodman's assigned territory."

In speaking of the phrase "best efforts" that court commented on pages 71-72 that the term is too vague to be fairly intelligible and too lacking in certainty to be enforceable.

Similarly in *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.,* 254 Ill. 215, 98 N.E. 263, the brewing company agreed to furnish the bottler with beer for an indefinite period of time in an amount sufficient to supply the latter's demand. Expenditures were made in reliance upon the agreement which was in writing. The court found that this agreement was lacking in mutuality and stated on pages 218-219:

"The only thing the contract bound appellant to do was to pay the price agreed upon and bottle the beer of appellee and to market the same as the product of appellee so long as it furnished beer satisfactory in quality and in such quantities as the trade demanded. No mention is made of any period of time the agreement should continue in force. . . . It cannot be doubted, we think that the contract was unilateral and void for want of mutuality . . . Furthermore, no time being fixed during which the agreement should continue in force, it was terminable at the will of either party."

In this case, there was no obligation upon Kolbus other than to use his best efforts. He had no obligation to sell any specific quantity and no obligation to meet any quotas. The operation of this contract was totally dependent upon the actions of Kolbus. The mere allegation of

best efforts is too indefinite and uncertain to be an enforceable standard. As such, the contract was lacking in mutuality of obligation and unenforceable.

■ Even assuming the terms were definite and that there is the requisite mutuality for the enforcement of this agreement, the agreement, being for an indefinite duration, is terminable at the will of either party. It has long been the holding of the Illinois courts that where an executory contract fixes no time for its operation, it is terminable at the will of either party. (*Schoen v. Caterpillar Tractor Co.*, 103 Ill.App.2d 197, 243 N.E.2d 31; *Joliet Bottling Co. v. Brewing Co.*, 254 Ill. 215, 98 N.E. 263; *Meadows v. Radio Industries*, 222 Fed. 347; *Gage v. Village of Wilmette*, 315 Ill. 328, 146 N.E. 325.) The agreement here was executory in nature. No fixed time or duration is alleged. As such, insofar as its executory portions are concerned, it is terminable at the will of either party.

The allegations in the counterclaim allege that the termination was without notice. This poses a somewhat difficult question, as the contract had been in existence for ten years. An argument could be made that reasonable notice should be required under such circumstances. However, with the exception of the *Goodman* and *Meadows* cases cited herein, notice was not given in the above cases. These courts have held that these contracts for indefinite duration may be terminated at will. Under these holdings, notice would not appear necessary.

For the foregoing reasons we hold that the allegations of the counterclaim herein do not set forth the terms of a mutuality enforceable and binding contract and we therefore affirm the trial court's dismissal of the counterclaim. It is therefore not necessary to reach the question raised by the parties as to the application of the Statute of Frauds to this purported agreement and the issue of punitive damages.

Judgment affirmed.

CRAVEN and TRAPP, JJ., concur.