MICHAEL E. PENZELL, Plaintiff-Appellee and Counterdefendant-Appellee, v. KATHERINE S. TAYLOR, Defendant and Counterplaintiff-Appellant (Satellite Music Network, Inc., Counterdefendant-Appellee).

First District (6th Division)   No. 1—90—1340

Opinion filed September 6, 1991.

Law Offices of George E. Weaver, of Chicago (George E. Weaver and Robert C. Gislason, of counsel), for appellant.

Katz, Randall & Weinberg, of Chicago (Lawrence M. Karlin, of counsel), for appellee Michael E. Penzell.

Skadden, Arps, Slate, Meagher & Flom, of Chicago (David E. Springer, David W. Hansen, and Rawn H. Reinhard, of counsel), for appellee Satellite Music Network, Inc.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Michael E. Penzell, filed a single-count complaint against defendant, Katherine S. Taylor, seeking recovery of $15,000 for payment on a written demand promissory note. Taylor filed a counterclaim seeking to enforce an alleged guarantee made by Penzell that Taylor would earn $200,000 during her first year of employment with Satellite Music Network, Inc. (Satellite), consisting of counts sounding in fraud, breach of contract, breach of warranty of authority and breach of guaranty agreement against Penzell. Taylor also filed suit against Satellite, in which she sought damages for fraud, breach of contract and *quantum meruit* for commissions allegedly earned in the procurement of advertising for Sears Roebuck & Co. (Sears). The trial court dismissed the breach of guaranty agreement against Penzell for failure to state a cause of action. The trial court also granted summary judgment in favor of Penzell and Satellite on all remaining counts. Taylor appeals. (Taylor has subsequently paid the $15,000 promissory note to Penzell and that action is not at issue in this appeal.)

The record reveals the following relevant facts. Taylor had been employed for several years by ABC Television Network (ABC) as an account executive. Penzell, who previously worked for ABC, was employed as vice-president and central division sales manager for Satellite. In April 1986, Penzell contacted Taylor and inquired whether she was interested in working for Satellite as an account executive. Taylor indicated to Penzell that she would have to earn more money at Satellite than she made at ABC, which was approximately $85,000 to $100,000 on the basis of salary and commission. (In 1984, Taylor's earnings at ABC were $95,276, and $80,981 in 1985.) ABC did not

guarantee Taylor's commission income, but it did estimate her prospective earnings each year.

Penzell produced his W-2 form for 1985, which showed income over $300,000, for the purpose of demonstrating to Taylor the earning potential at Satellite. Penzell obtained authority to hire Taylor from his boss, Mel Diamond, and agreed that Taylor would be compensated at a 5% commission rate. On April 10, 1986, Taylor signed a letter from Penzell indicating that she would earn sales commissions at the rate of 5% against net sales after agency commission. The letter further stated that for the first three months of employment, Taylor was to receive a bimonthly draw of $3,750 which would then decrease to $2,708. The letter did not include language indicating any salary guarantees.

Taylor requested Penzell to memorialize the employment agreement in writing. Penzell provided Taylor with a letter received in April 1986 which states in relevant part:

> "This reflects our personal and private understanding that I will make best efforts to structure assignments to provide you with a clear shot at annual earnings at the rate of $200,000 gross at Satellite Music Network. Of course, the effectiveness of your efforts is the other part of the equation."

Penzell also wrote a letter upon Taylor's request to Tom Dorazil at Lumbermen's Investment Corporation. (Dorazil was Taylor's boyfriend.) In that letter dated April 24, 1986, Penzell stated that Satellite had hired Taylor as an account executive with guaranteed earnings for the next calendar year in the amount of $200,000, and that he anticipated a long and profitable association. On May 5, 1986, Penzell signed a request for verification of employment from Columbia National Bank of Chicago for a mortgage for Taylor, in which he listed her monthly income as $16,666.67.

On May 1, 1986, Taylor left ABC and began employment with Satellite. Upon commencing employment, Taylor signed an insurance form listing her annual salary as $65,000. Penzell informed Taylor of the general geographic territory for which she would be responsible, as well as the account assignments.

In July 1986, Taylor reviewed the accounts that were assigned to her in Penzell's billing box. At that time, Taylor determined that Penzell had misled her because the accounts assigned to her were not going to generate $200,000 in commissions. Taylor did not speak to Diamond or anyone else at Satellite about the alleged guarantee.

Taylor confronted Penzell after reviewing the account books, and told him that she was experiencing financial difficulty. Penzell in-

formed Taylor that she would be able to increase her earnings because he was going to leave Satellite shortly.

In October 1986, Taylor approached Penzell and requested a loan because she could not meet her car, credit card, and mortgage payments on the house in Barrington she had purchased shortly before beginning employment with Satellite. Penzell lent $15,000 in cash to Taylor, and she signed a note stating that repayment was upon demand. This was the loan which precipitated the present action.

In January 1987, Taylor met with Diamond and John Tyler, also a Satellite executive. At that meeting, Tyler and Diamond assured Taylor that they wanted her to be happy, and that she would make a lot of money. Taylor was informed that she was no longer reporting to Penzell, but would report directly to Diamond.

Diamond apologized for all the confusion and told her that she would be handling the Sears account. Diamond told Taylor that he would forgive the $30,000 draw balance that she accumulated through January 26, 1987, and that she would now receive 10% commission on all orders that she wrote.

During the course of that meeting, Taylor showed Diamond a copy of the letter Penzell had written to her in April 1986, and told him that the salary of $200,000 promised by Penzell had not been honored. Diamond replied that "there was nothing that he could do about it." Taylor had no further conversations with either Diamond or Tyler about the $200,000 promise. Taylor thought that she could make sufficient money in the future in order to attain the $200,000 yearly salary.

In April 1987, Taylor was promoted to Penzell's former position as sales manager and maintained the same rate of commission. After her promotion, Taylor interviewed and subsequently hired Marilyn Cilo Cross as a sales representative. Taylor told Cross that she would receive a draw of $40,000, and that her potential income including commissions would be $75,000. Taylor stated that she made this estimate after conducting an extensive study of Satellite's past billing history, and that it was not a guarantee.

Taylor's employment with Satellite ended on December 31, 1987, at which time Satellite closed the Chicago office. Taylor was paid commissions on all ads that ran during the time she was employed by Satellite. The record reflects that Taylor earned $155,000 at Satellite during 1987.

In his deposition, Penzell stated that he told Taylor that if she worked real hard she might be able to make between $100,000 and $200,000 or more per year, depending on a number of factors. Penzell

informed Taylor at their initial meeting that a "guarantee was out of the question" and that he could not officially represent to her that she could make $200,000 per year without obtaining approval of the guarantee from Diamond or Tyler. Penzell further stated that the phrase "personal and private understanding," found in his April 1986 note to Taylor meant that it was purely personal and was outside of his competence as a vice-president of Satellite. Penzell also said that he was not truthful at the time he wrote the letter to Dorazil because Taylor's income was not guaranteed by Satellite at $200,000 or any other figure. Satellite never guaranteed an income to anyone in the sales department.

Penzell acknowledged that the amount of Sears' advertising substantially increased after Taylor began her employment with Satellite; however, it could not be attributed solely to her efforts. Penzell was also heavily involved in the negotiations on the account, and much of the work took place with higher level employees such as himself, Diamond and Tyler. According to Penzell, commissions were earned for an ad after it was run and had been billed, not when the business was written. Penzell stated that it was customary in their industry that ads which were written before a person left employment, but were not billed, did not earn commissions. Penzell further stated that Taylor was aware of this practice, which was common knowledge at Satellite.

Taylor stated in her deposition that the only reason that she left ABC was because Satellite guaranteed her income in the amount of $200,000 for one year, unless and until such time as she might be discharged for cause. Taylor stated that she expected Satellite to return to her the difference between $200,000 and her actual earnings. Her income after April 20, 1987, was not guaranteed at any level.

Taylor stated that she was paid commissions only after an ad ran while employed at both ABC and Satellite, and that she believed that was standard for the industry. When Taylor left her previous position, she did not receive commissions for ads that ran after the time she was no longer employed at ABC.

On appeal, Taylor contends that the trial court erred in granting summary judgment in favor of Penzell and Satellite on her claims for fraud and breach of contract. She also challenges the grant of summary judgment in favor of Penzell on her claim for breach of warranty of authority, and the award of summary judgment for Satellite on her claim for *quantum meruit* recovery for commissions earned in the procurement of advertising for Sears. Taylor contends further

that the trial court erred in dismissing her breach of guaranty agreement against Penzell for failure to state a cause of action.

It is well established that a motion for summary judgment is proper where the documents on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In reviewing the order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact exists. *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 441 N.E.2d 860.

We turn first to Taylor's contention that the court erred in granting summary judgment in favor of Satellite and Penzell on her claims of fraud and breach of contract. Defendants argue that Taylor waived her claims because she continued to work after learning that she would not earn the alleged $200,000 employment guarantee. We find, however, that we need not reach the merits of whether Taylor's subsequent actions constituted waiver because we find that neither Penzell nor Satellite guaranteed Taylor that her first year's earnings would be $200,000.

In order to state a cause of action for fraud, the plaintiff must establish the misrepresentation of a material fact which was made for the purpose of inducing the other party to act; that the party making the statement knew or believed it to be false; that the party to whom the statement was made had a right to rely upon it and did so; and that reliance led to the party's injury. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690, citing *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263; *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) Statements regarding future events or circumstances are not a basis for fraud. (*Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 458 N.E.2d 1027.) However, an exception exists where the false promise or representation as to future conduct is alleged to be the scheme employed to accomplish the fraud. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.

Taylor has failed to show that Penzell engaged in a scheme of misrepresentations to induce her to leave her previous employment with ABC and accept employment with Satellite, and that he guaranteed her salary of $200,000. Taylor relies primarily upon the April 1986 letter which states that Penzell "will make best efforts to structure assignments to provide you with a clear shot at annual earnings at the rate of $200,000 gross." That statement clearly does not

amount to a guarantee. Moreover, it must be read in conjunction with the following sentence, which provides that the "effectiveness of your efforts is the other part of the equation." As such, the contingency attached to the proposed salary of $200,000 prevents this letter from serving as an unconditional guarantee of such a salary.

Penzell's letter of April 24, 1986, to Dorazil confirms Taylor's salary for the next calendar year at $200,000; however, that letter was written for the express purpose of helping her obtain a mortgage. Moreover, that letter was not directed to Taylor; rather, it was addressed to Dorazil, thereby negating any inference that Taylor relied upon its contents and that it was made for the purpose of fraudulently inducing her to act. Also, the record shows that on April 10, 1986, prior to commencing employment at Satellite, Taylor signed a letter from Penzell indicating that she would earn sales commissions at the rate of 5% against net sales after agency commission, and reciting the amount of monthly draw that she would receive during her first six months of employment. That letter did not contain any language pertaining to a salary guarantee.

Similarly, the employment verification to Columbia National Bank of Chicago, signed on May 5, 1986, after Taylor had already begun work at Satellite, cannot be said to have fraudulently induced her decision to leave ABC and join Satellite. The employment verification was also intended to help Taylor secure a mortgage on the house in Barrington that she had already purchased prior to the time she accepted the position at Satellite.

Thus, any argument positing that Taylor relied on Penzell's projections as set forth in the communication to Dorazil and the bank is without merit. Indeed, Taylor stated during her deposition that her debt structure with respect to her house and car payment was in place before she began work at Satellite.

Other evidence found in the record belies Taylor's assertion that she was guaranteed an annual income of $200,000. Taylor signed an insurance form at the time she was hired by Satellite listing her annual salary as $65,000. We find that the trial court properly concluded that there is no genuine controversy of material fact as to the fraudulent nature of both Penzell's and Satellite's actions, and that they are entitled to summary judgment as a matter of law. *Jackson v. Reliable Paste & Chemical Co.* (1985), 136 Ill. App. 3d 766, 483 N.E.2d 939.

We turn now to Taylor's claims for breach of contract against Penzell and Satellite. Count III sought damages from Penzell for breach of contract for his alleged failure to structure assignments to ensure that she would have a reasonable opportunity to earn $200,000

per year as memorialized in his April 1986 letter to Taylor. Count IV sought damages from Satellite for breach of the employment agreement by compensating Taylor at substantially less than $200,000 per year, and for terminating her employment without cause.

In a breach of contract action, plaintiff must establish an offer and acceptance, consideration, the terms of the contract, plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract and damages resulting from the breach. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 428 N.E.2d 1028.) For the court to find that an enforceable contract exists, the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied. (*Magid Manufacturing Co. v. U.S.D. Corp.* (N.D. Ill. 1987), 654 F. Supp. 325, 332, citing *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.) When the material terms and conditions are not ascertainable, no enforceable contract is created. *Magid Manufacturing*, 654 F. Supp. 325; *Kraftco Corp*, 1 Ill. App. 3d 635, 274 N.E.2d 153.

In her claim against Penzell, Taylor relies upon the April 1986 letter in which Penzell stated that he would use his "best efforts" in structuring assignments to ensure that she earned $200,000. As previously discussed, we do not find that Penzell unequivocally guaranteed to Taylor that she would earn $200,000. Moreover, this court has held that the phrase "best efforts" is too indefinite and uncertain to be an enforceable standard. (*Kraftco Corp.*, 1 Ill. App. 3d 635, 274 N.E.2d 153; *Goodman v. Motor Products Corp.* (1956), 9 Ill. App. 2d 57, 132 N.E.2d 356.) Therefore, we find that Taylor's claim for breach of contract fails becaus the best effort required to be expended by Penzell is too vague to as certain.

Taylor's breach of contract claim against Satellite fares no better. Taylor maintains that Satellite breached its agreement by compensating Taylor at substantially less than $200,000 per year. (The record indicates that Taylor earned $205,055.30 for the period May 1, 1986, through December 1987.) However, on April 10, 1986, prior to the time she began employment with Satellite, Taylor signed an agreement indicating that she would earn sales commissions at the rate of 5% against net sales after agency commission, and set forth the bimonthly draw that she would receive during the first six months of employment. Taylor does not allege, nor is there evidence in the record, that she did not receive those draws.

Taylor's contention that she was terminated without cause is also without merit. In her deposition, Taylor stated that Satellite guaran-

teed her income for one year, unless and until such time as she might be discharged for cause. Satellite closed its Chicago office on December 31, 1987, and terminated all employees, thereby providing sufficient cause for dismissal.

Accordingly, we find that the trial court correctly granted summary judgment on the breach of contract counts against Penzell and Satellite.

Taylor also maintains that the trial court erred in awarding summary judgment to Penzell on her claim that he breached his authority in fixing the terms of her salary at $200,000 per year. We need only reiterate our conclusion that Penzell did not guarantee to Taylor that she would earn $200,000.

We find, therefore, that there is no genuine issue of material fact with respect to Penzell's breach of authority, and that summary judgment was properly granted in this instance.

■ We turn now to Taylor's charge that the court erred in granting summary judgment on her *quantum meruit* claim that she should be entitled to the commission on the Sears account. She argues that under the procuring cause rule, she was entitled to the commission on the account. Under the procuring cause rule, a party may be entitled to commissions on sales made after the termination of a contract if that party procured the sales through its activities prior to termination; however, the rule applies only if the contract does not expressly provide when commissions will be paid. (*Scheduling Corporation of America v. Massello* (1987), 151 Ill. App. 3d 565, 503 N.E.2d 806, citing *Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599.) The procuring cause rule is an equitable doctrine that protects a sales person who is discharged prior to culmination of a sale but who has done everything to effect the sale. *Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 167 N.E.2d 875.

■ In his deposition, Penzell stated that commissions were earned for ads only after they were run and had been billed, and not when the business was written. According to Penzell, this practice was customary in the industry as well as Satellite and Taylor was aware of this fact. Most importantly, Taylor in her own deposition agreed with Penzell's statement and said that she was paid commissions only after an ad had run at both ABC and Satellite, and that she assumed that was standard practice for the industry.

In view of the fact that the ads ran and were billed in 1988 after Taylor's departure, we find that the industry standard of which Taylor was aware in paying commissions precludes her from prevailing on

her claim for *quantum meruit*. Accordingly, we conclude that the trial court's grant of summary judgment for this count was proper under the circumstances of this case.

■ Taylor finally contends that the trial court improperly dismissed her claim against Penzell for breach of personal guaranty pursuant to section 2—615 of the Illinois Code of Civil Procedure for failure to state a cause of action. The crux of Taylor's claim is that the phrase "personal and private understanding" included in the April 1986 letter provides her with Penzell's personal guaranty that she would earn $200,000.

As we have already noted, the April 1986 letter does not amount to any type of guaranty. Penzell stated only that he would make his best efforts to provide Taylor with an opportunity to make $200,000 annually. Penzell further conditioned the statement by pointing out that Taylor's ability to earn that amount would also depend on her own efforts. The letter on its face did not constitute a guaranty, and the trial court correctly dismissed that count for failure to state a cause of action.

For all the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.