2024 IL App (1st) 231866-U

FIRST DISTRICT,
FIRST DIVISION
July 22, 2024

No. 1-23-1866

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JAMES D. RITZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 2022 L 010587 |
| MELISSA N. NEDDERMEYER and RYAN | ) | |
| GRACE, | ) | Honorable |
| | ) | Anthony C. Swanagan, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Lavin concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*: Plaintiff failed to state a cause of action for fraudulent inducement where the alleged statements upon which he relied were too vague and indefinite to form a reasonable basis for his reliance.

¶ 2    Plaintiff James Ritz, former police chief of the Village of Willow Springs (Village), brought suit against Village President Melissa Neddermeyer, alleging that she fraudulently induced him to remain in the position of police chief and not seek alternative employment by falsely promising that he would be "favorably considered" for a contract extension. He also

alleged conspiracy to commit fraudulent inducement against Neddermeyer and Village Administrator Ryan Grace.

¶ 3    The trial court dismissed Ritz's complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 2-615, 2-619(a)(9) (West 2020)), finding that he failed to state a cause of action and that defendants were immune from liability under the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2020)). For the reasons that follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5    Ritz was hired as police chief for the Village under a three-year contract from July 18, 2018 to July 17, 2021. After his contract expired, he remained police chief as an at-will employee.

¶ 6    Sometime in July 2021, before Ritz's contract expired, he met with Neddermeyer and Village Trustee Michael Kennedy. Neddermeyer asked Ritz to continue as police chief until a new Village Administrator was found to replace the outgoing administrator, Brent Woods. She allegedly told Ritz that he "would be favorably considered for a contract extension given his exemplary service."

¶ 7    On January 27, 2022, defendant Ryan Grace was appointed as Village Administrator. Ritz alleges that Grace and Neddermeyer "engaged in a series of actions calculated to cause" Ritz's resignation. On February 7, 2022, Ritz suspended an officer for making an inappropriate statement. Grace and Neddermeyer subsequently ordered Ritz to terminate the officer, which led another officer to resign.

¶ 8    On February 17, 2022, Grace gave Ritz a written writeup for failing to report a squad car being totaled on the midnight shift, although, as Ritz alleges, he was unaware of the incident in question. Ritz threatened to inform the village trustees and police officers of Grace's

"unprofessional and wrongful actions." At a meeting the following week, Grace agreed not to put the writeup in Ritz's personnel file.

¶ 9       On March 28, 2022, at a meeting between Ritz, Neddermeyer, Grace, and Trustee Kennedy, a disagreement arose over the disbursement of funds from the Village's Equitable Sharing Program account. When Grace purported to direct how the funds would be spent, Ritz asserted that he had "complete oversight and management of the program and the spending" and would report any "interference" by the Village to the program director. According to Ritz, Neddermeyer and Grace were "livid," Neddermeyer "yelled" at him, and the meeting "ended abruptly."

¶ 10      On April 1, 2022, Neddermeyer and Grace informed Ritz that "due to current situations over the past couple of weeks," if he did not resign as police chief, they would initiate termination proceedings against him before the Board of Trustees. Believing that the trustees would support Neddermeyer, Ritz tendered his letter of resignation on April 5.

¶ 11      Ritz filed the instant suit against Neddermeyer and Grace on November 29, 2022. In his second amended complaint, he sought relief in two counts. In count I, fraud in the inducement, he alleged that when Neddermeyer told him that he would be "favorably considered" for a contract extension, she "knew her statement to [him] was false" and "planned to have [him] replaced as soon as practical upon the appointment of a new Village Administrator." Ritz nevertheless relied on her statement by continuing to work as police chief without searching for alternate employment.

¶ 12      Ritz alleged that his reliance on Neddermeyer's statement was reasonable due to his "many accomplishments" as police chief, including "assembl[ing] a team of extremely competent *** employees," adjusting department policies in response to changes in the law, and

conducting community outreach programs. He additionally cited his work with the Equitable Sharing Program (ESP), a program administered by the U.S. Department of Justice in which federally forfeited assets are shared with participating law enforcement agencies. In 2017, the Village was removed from the program due to misuse of funds. During Ritz's tenure as police chief, the Village was reinstated into the program under the condition that Ritz would "personally supervise[] and approve[] all ESP expenditures by the Village." Neddermeyer acknowledged Ritz's accomplishments in a public address on June 24, 2021 in which she stated:

> "The Willow Springs Police Department is knocking it out of the park. Under the direction of Chief James Ritz, the department has been reinstated to the Department of Justice Equitable Sharing Program after being kicked out for mismanagement under a previous administration. Our department is also very involved in our community ***. In addition, we are looking to hire more full-time officers very soon."

¶ 13    In count II, conspiracy to commit fraud in the inducement, Ritz alleged that Neddermeyer and Grace agreed to "remov[e] [Ritz] as Chief of Police by whatever means were necessary," including "unlawfully interfering in [Ritz's] duties to properly administer the Equitable Sharing Program in the Village." Ritz further alleged that, as a result of Neddermeyer's alleged fraud (count I) and defendants' alleged conspiracy (count II), he did not begin searching for a new job until April 5, 2022, and was unemployed until November 28, 2022, resulting in "a loss of income and benefits of approximately $75,000."[1]

¶ 14    Defendants filed a motion to dismiss under sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 2-615, 2-619(a)(9) (West 2020)), arguing that Neddermeyer's alleged

---

[1] Ritz also named the Village as a defendant. The Village was dismissed on grounds of immunity, which Ritz does not contest on appeal.

statement on which Ritz purportedly relied was "so vague [as] to be not actionable." They additionally argued that they were immune from liability under the Tort Immunity Act.

¶ 15     On September 12, 2023, the trial court granted defendants' motion to dismiss, finding that Ritz "fails to state a cause of action in either Count I or Count II" and, in the alternative, that his claims were "barred *** pursuant to the Tort Immunity Act."

¶ 16                                ANALYSIS

¶ 17     In ruling upon a section 2-615 motion to dismiss, the court considers whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). We review the trial court's grant of a motion to dismiss under sections 2-615 and 2-619(a)(9) *de novo*, taking as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts. *Young v. Bryco Arms*, 213 Ill. 2d 433, 441 (2004); *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009).

¶ 18                          Fraudulent Inducement

¶ 19     Ritz argues that the trial court erred in finding that he failed to state a cause of action for fraudulent inducement. Fraudulent inducement is a form of common-law fraud, the elements of which are "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. Promissory fraud, in which the false statement consists of a promise or representation as to future conduct, is only actionable if it is "alleged to be the scheme employed to accomplish the fraud." *Penzell v. Taylor*, 219 Ill. App. 3d 680, 686 (1991); see *General Electric Credit Auto Lease, Inc.*

*v. Jankuski*, 177 Ill. App. 3d 380, 384 (1988) (observing that "the exception *** seems to engulf the general rule" since, in a fraud action, the defendant's alleged misrepresentations "are ordinarily the schemes by which the victim is defrauded" (internal quotation marks omitted)). Here, Ritz alleges that Neddermeyer's representation that he would be "favorably considered" for a contract extension was part of a scheme to induce him to continue working as police chief until a new village administrator could be appointed.

¶ 20       However, "[a]n indefinite statement will not qualify to support an action for fraud." *Marriage of Bower*, 87 Ill. App. 3d 324, 326 (1980) (dismissal of petition alleging fraud was proper where "[t]he alleged statements by the respondent are too vague and indefinite to form a reasonable basis for one's reliance"). For instance, in *Penzell*, 219 Ill. App. 3d at 686, plaintiff alleged that defendant "engaged in a scheme of misrepresentations to induce her to leave her previous employment *** and accept employment with" defendant's company. In support, plaintiff cited a letter in which defendant told her that he would "make best efforts to structure assignments to provide [her] with a clear shot at annual earnings at the rate of $200,000 gross." *Id.* We found this statement "clearly does not amount to a guarantee" and was insufficient as a matter of law to support her claim of fraud. *Id.* at 686-87.

¶ 21       *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859 (1993), is illustrative by contrast. In January 1989, plaintiff left his job and became the director of defendant's training center in reliance on defendant's representations that he would be employed through 1991 and was "guaranteed" a $25,000 bonus for his first year. *Id.* at 861. In October 1989, defendant summarily terminated plaintiff and gave him half of the promised bonus. *Id.* at 862. Plaintiff alleged that "defendant's representation that plaintiff would supervise presentation of training

programs through 1991" was made "with the present intention of not complying with it." *Id.* at 869. We found these allegations "adequate to demonstrate a scheme to defraud." *Id.*

¶ 22    Unlike the defendant in *Johnson*, Neddermeyer did not state that Ritz's contract "would" be renewed or offer any "guarantee[]" of continued employment. Rather, as in *Penzell*, 219 Ill. App. 3d at 686-87, Neddermeyer's alleged statement to Ritz that he would be "favorably considered" for a contract extension, as well as her June 24, 2021 public statement that the police department was "knocking it out of the park" under Ritz's direction, "clearly does not amount to a guarantee" of continued employment as police chief. Taken as a whole, the complained-of statements are too vague and indefinite to form the basis of a fraud action. Ritz's subjective belief that he deserved and would likely be offered a contract extension due to his allegedly "stellar performance" does not render his reliance on Neddermeyer's statements reasonable as a matter of law. Accordingly, the trial court properly dismissed the fraudulent inducement count of Ritz's complaint.

¶ 23    The trial court also properly dismissed count II of Ritz's complaint, in which he alleged that Neddermeyer and Grace conspired to commit fraudulent inducement. Civil conspiracy is not an independent cause of action but must be based upon an underlying tort. *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (2004). Where, as here, a plaintiff fails to state a valid cause of action for the underlying tort, his conspiracy claim also fails. *Sud Family Ltd. Partnership v. Otto Baum Co., Inc.*, 2024 IL App (4th) 220782, ¶ 60 (where plaintiff failed to state a cause of action for fraud, trial court properly dismissed conspiracy counts based upon the same allegations of fraud).

¶ 24                                    Tort Immunity

¶ 25    As an independent basis for dismissal, the trial court found that defendants were immune from civil liability under section 2-201 of the Tort Immunity Act, which provides, in relevant

part, that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even when abused." 745 ILCS 10/2-201 (West 2020).

¶ 26    For an employee to enjoy immunity under this section, their act must result from both "the determination of policy" and "the exercise of discretion" (*id.*). *Albers v. Breen*, 346 Ill. App. 3d 799, 808 (2004). Policy determinations are decisions that require a governmental employee " 'to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 342 (1998) (quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Discretionary acts "involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 395 (2000). By contrast, ministerial acts (which do not enjoy immunity) are performed in a prescribed manner without reference to the official's discretion. *Id.* at 396.

¶ 27    Hiring decisions are policy decisions and are "inherently discretionary" because there are "many factors *** [to] consider and evaluate." *Johnson v. Mers*, 279 Ill. App. 3d 372, 380 (1996) (village's decision to hire a police officer was a discretionary act subject to section 2-201 immunity). As Ritz concedes, at any time after his contract expired, Neddermeyer could have "simply exercis[ed] her power to terminate an at-will employee." Ritz nevertheless asserts in conclusory fashion that "[t]he facts of this case do not involve the determination of policy" and that "[t]he Tort Immunity Act was not intended to protect Village employees who intentionally deceive an employee to continue employment while lining up the employee's intended replacement."

¶ 28        Under Supreme Court Rule 341, an appellant's brief must contain argument supported by legal authority. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). This court "is not a depository in which the appellant may dump the burden of argument and research" (*Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (internal quotation marks omitted)), and "where an appellant has failed to support his or her arguments with citations to authority, this court will not research the issues on the appellant's behalf" (*Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19). See *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 208 (2008) (appellant forfeited argument where it merely stated a proposition but made no attempt to support it with analysis or authority). Because Ritz has not supported his contentions regarding the Tort Immunity Act with analysis or citation to legal authority, the issue is forfeited.

¶ 29                                    CONCLUSION

¶ 30        For the foregoing reasons, we affirm the judgment of the trial court.

¶ 31        Affirmed.

¶ 32        JUSTICE PUCINSKI, specially concurring:

¶ 33        While Village President Neddermeyer's behavior in coaxing Chief Ritz to stay on as Chief for an indefinite period of time without the benefit of a contract is shamefully self-serving, I agree that it is not actionable under this complaint.  She conned a well-respected man into forgoing business opportunities by pretending to have confidence in him, but under the facts of this case and Illinois law she did not commit tortious conduct.